Citation Nr: 1554510 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 11-20 919 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a skin disorder.

2. Entitlement to service connection for coronary artery disease (CAD), to include hypertension, including as secondary to service-connected disorders. 



REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

Shana Z. Siesser, Counsel


INTRODUCTION

The Veteran served on active duty from July 1975 to March 1984 and active duty for training from February 1987 to May 1987. This case comes before the Board of Veterans' Appeals (Board) on appeal from November 2006, July 2007, and June 2008 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

A Board hearing was conducted in this matter via videoconference in January 2013; a transcript of which is contained in the electronic record.

These claims were previously before the Board in September 2014, at which time they were remanded for additional development. 

Claims of service connection for posttraumatic stress disorder (PTSD), obesity to include an eating disorder, and pes planus were also remanded in September 2014. The AOJ granted those claims in an October 2015 rating decision. Therefore, they are no longer before the Board. 

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this case should take into consideration the existence of these electronic records.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.



REMAND

Regarding the Veteran's claim of service connection for a skin disorder, remand is necessary for an adequate VA examination. Although the Veteran was provided a VA examination in July 2015, the Board finds this examination to be inadequate as it does not address all skin disorders diagnosed within the period on appeal. At the July 2015 VA examination, the examiner diagnosed tinea pedis. She noted that the Veteran had been diagnosed with other skin disorders in the past but only tinea pedis was visible at that time. The examiner opined that the currently diagnosed tinea pedis was less likely than not etiologically related to the skin rash that the Veteran noted upon discharge from service or otherwise related to service. As a rationale, the examiner stated that numerous skin conditions could be described as a "skin rash" and therefore, it is impossible to determine what skin condition was observed upon discharge from service. She further noted that tinea pedis was the only currently visible skin disorder, that there was no diagnosis of tinea pedis in the service treatment records, and that tinea pedis is never described as a "rash." Additionally, the examiner determined there was no visible lichen sclerosus, eczema, or seborrheic dermatitis and none of those conditions were listed in the cumulative diagnosis section of the Veteran's medical records. 

However, although the Veteran's skin disorders were not active at the time of the VA examination, the treatment records show that during the period on appeal, there are diagnoses of lichen sclerosus, eczema, tinea pedis, seborrheic dermatitis, acne, dermal fibrosis, stasis dermatitis, NLD, porokeratosis, and lichen simplex chronicus. Therefore, the Board finds the July 2015 VA examination to be inadequate and VA opinions are necessary regarding the etiologies of those skin disorders. To the extent possible and if required by the examiner, an examination should be provided during a period of flare-up. See Ardison v. Brown, 6 Vet. App. 405, 407-08 (1994) (noting that skin disorders are often are cyclical in manifestation and subject to remission and recurrence).

Regarding the claim for CAD/hypertension, remand is required for a VA examination. VA must provide a medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period; and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability; but (4) there is insufficient competent medical evidence on file for VA to make a decision on the claim. 38 C.F.R. § 3.159(c)(4) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The Veteran has not been afforded a VA examination in connection with her claim for service connection for hypertension. The evidence shows that she has been diagnosed with hypertension, and she has asserted that the disorder is secondary to her service-connected PTSD and eating disorder. As of an October 2015 rating decision, service connected was granted for these issues. Therefore, she should be afforded a VA examination and medical opinion to determine the nature and etiology of her hypertension.

While on remand, the AOJ shall provide adequate VCAA notice to the Veteran regarding this claim. In this case, it does not appear that the Veteran has been provided adequate VCAA notice for the issue of secondary service connection for CAD and hypertension due to service-connected PTSD and an eating disorder/obesity. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). The AOJ sent her VCAA letters in June 2006, October 2006, and July 2007, but these letters did not advise her of the evidence necessary to substantiate a claim for service connection for CAD and/or hypertension on a secondary basis. This letter only addressed direct service connection. Therefore, while on remand a proper notice letter for this secondary service connection issue must be provided. 

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran a notice letter in connection with her claim for service connection for hypertension, to include as secondary to her service-connected PTSD and eating disorder. 

2. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

3. Contact the Veteran and afford her the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. After any additional records are associated with the claims file, provide the Veteran with a VA examination to determine the etiology of any current skin disorder. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's STRs. An explanation for all opinions expressed must be provided. 

The examiner first must provide all currently diagnosed skin disorders. For each diagnosed skin disorder, the examiner must opine whether it at least as likely as not (a 50 percent probability or more) had its onset in service, or is otherwise related to the Veteran's military service. 

In addition to any skin disorders diagnosed upon physical examination, even if not diagnosed on examination, the examiner must provide an opinion on the etiology of any skin disorder diagnosed since the inception of the appeal, including: lichen sclerosus, eczema, tinea pedis, seborrheic dermatitis, acne, dermal fibrosis, stasis dermatitis, NLD, porokeratosis, and lichen simplex chronicus. The examiner shall opine whether, for each of these disorders, the disorder at least as likely as not (a 50 percent probability or more) had its onset in service, or is otherwise related to the Veteran's military service. If the examiner finds an examination must be done during a flare-up of one of these disorders, such an examination must be provided.

The Veteran is competent to attest to factual matters of which she has first-hand knowledge. The examiner must elicit a full history from the Veteran and consider the Veteran's lay statements of record. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

5. After any additional records are associated with the claims file, provide the Veteran a VA examination to determine the nature and etiology of her CAD and hypertension. The entire claims file should be made available to and be reviewed by the examiner, and it should be confirmed that such records were available for review. The examiner must elicit a full history from the Veteran of her symptoms related to her CAD and hypertension. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. All opinions must take into account the Veteran's own history and contentions.

First, the examiner must provide an opinion, in light of the examination findings and the service and post-service evidence of record, as to whether it is at least as likely as not (50 percent or greater probability) that CAD and/or hypertension manifested in or is otherwise related to the Veteran's military service. 

Second, the examiner must also provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that CAD and hypertension were caused or aggravated by the Veteran's service-connected PTSD and eating disorder.

6. Notify the Veteran that it is her responsibility to report for any scheduled VA examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

7. Review the VA examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall, supra.

8. When the development requested has been completed, the case should be reviewed by the AOJ on the basis of additional evidence. If the benefit sought is not granted, the Veteran should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).